**Terry D. TRICE, Petitioner,**

v.

**Larry KERR, Respondent.**

**No. 83–C–943–S.**

United States District Court,
W.D. Wisconsin.

Dec. 27, 1983.

As Amended May 8, 1984.

---

Terry D. Trice, pro se.

U.S. Atty. John R. Byrnes, Madison, Wis., for respondent.

## ORDER

SHABAZ, District Judge.

On November 4, 1983 the Court dismissed petitioner Terry Trice's petition for habeas corpus for failure to state a claim for relief. On November 15, 1983 Trice supplemented both the factual and legal assertions of his original petition and moved for reconsideration of the Court's previous order. The motion is granted, and the Court reconsiders the petition in light of Trice's latest assertions.

## FACTS

Trice is a District of Columbia (D.C.) offender presently incarcerated at the Federal Correctional Institution at Oxford, Wisconsin. In his original petition, Trice alleged that he was transferred without notice or hearing from an institution in the D.C. correctional system to an institution in the larger Federal correctional system. He contended that the transfer violated his right to due process and rendered his continued confinement in the Federal system illegal. Trice sought transfer back to the District of Columbia for the neglected hearing. The Court dismissed Trice's petition on the ground that inmates have no liberty interest derived from the Constitution itself in remaining at any particular institution within a unified correctional system, *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976), or even in remaining

in one correctional system as opposed to another. *Corgain v. Miller,* 708 F.2d 1241, 1253 (7th Cir.1983).

Trice now asserts, however, that a D.C. Department of Corrections rule in effect at the time of his transfer, DO 4810.1A, conferred a liberty interest on him and other D.C. offenders requiring notice and hearing before transfer to the Federal system. In the alternative, he suggests that a consent decree in the D.C. Superior Court case of *Robertson v. Holland,* Civil Action Number 9502–708, applies to him and should be enforced by the Court through his transfer back to the District for the pre-transfer hearing.

## OPINION

DO 4810.1A, promulgated by the Council of the District of Columbia under the authority of D.C.Code Ann. § 24–442 (1981) provides:

> Sentenced D.C.Code offenders in the following categories may be recommended by the Administrator for transfer to a BOP institution:
>
> (1) Those who are severe management problems.
>
> (2) Those whose lives are in jeopardy.
>
> (3) Those who are protective custody cases because they have testified for the government, witnessed crimes in institutions or were former law enforcement officers.
>
> (4) Those with commitment papers which indicate that the sentencing judge has recommended commitment to a BOP institution.
>
> (5) Those who are known escape risks.
>
> (6) Those who present a threat to the life of themselves or others.
>
> (7) Individuals with severe psychological problems caused by distant separation from family and community ties.

DO 4810.1A–6(c).

In addition, the rule requires that an inmate be given an opportunity to state his objections to a proposed transfer for the record:

> Upon receipt of notification that a DCDC resident is to be transferred to a BOP institution it shall be the responsibilities of the institution Administrator to ensure that the resident is afforded a hearing before a committee consisting of at least three institutional staff members and advised of the reason(s) for transfer. During the hearing the resident shall be afforded the opportunity to indicate any objections, and rationale for the same, regarding the transfer. Recorded minutes of the proceedings will be signed by the resident, members of the committee and filed in the resident's records jacket prior to transfer. Should a resident decline such a hearing, this too will be made a matter of record, signed by the resident and committee members (committee members will sign even if the resident refuses to do so), and filed in the resident's records jacket prior to transfer.

DO 4810.1A–6(c).

The question presented is whether DO 4810.1A creates a liberty interest precluding transfer of D.C. offenders to the Federal system without due process. The Court decides the rule does not create a liberty interest for several reasons.

■■■ In order for an inmate to have a liberty interest in continued incarceration at a particular correctional institution, there must exist a statute, rule, or practice conditioning transfer of the inmate upon proof of serious misconduct or upon the occurrence of other specified events. *Meachum v. Fano,* 427 U.S. 215, 226, 96 S.Ct. 2532, 2539, 49 L.Ed.2d 451 (1976). Regardless of whether an intermediate decisionmaker must comply with the substantive and procedural requirements of a rule or statute before recommending that an inmate be transferred, the inmate has no liberty interest in avoiding transfer if the person responsible for the ultimate decision can transfer the inmate for any reason or for no reason whatsoever. *Olim v. Wakinekona,* —— U.S. ——, 103 S.Ct. 1741, 1747–1748, 75 L.Ed.2d 813 (1983) (citations omitted). *Cf. McDonnell v. United States Attorney General,* 420 F.Supp. 217, 221

(E.D.Ill.1976) (substantive or procedural requirements for disciplinary transfers did not create liberty interest where discretion to transfer inmates for other reasons unlimited).

■ In *Olim*, the State of Hawaii appealed a Ninth Circuit Court of Appeals decision holding that Hawaii's prison transfer regulations created a constitutionally protected liberty interest. The regulations required that a prison program review committee give an inmate notice and a hearing with rather extensive procedural protections before recommending him for an interstate prison transfer. The Ninth Circuit found that an inmate's transfer to a mainland prison in California without the full procedural protections required under the regulations had violated his right to due process. (*Wakinekona v. Olim*, 664 F.2d 708, 712 (9th Cir.1981).

In reversing, the Supreme Court reasoned that the notice and hearing requirements imposed on the committee were irrelevant to the existence of a liberty interest because the prison administrator could in his discretion accept, reject, or modify the committee's advisory recommendation, and the administrator's exercise of that discretion was standardless.

Much the same situation is presented here. Although DO 4810.1A appears to restrict the ability of institution administrators to recommend discretionary transfers of D.C. offenders, it does not purport to affect the discretionary transfer authority of the Attorney General under D.C.Ann. § 24–425 (1981):

All prisoners convicted in the District of Columbia for any offense ... shall be committed, for their terms of imprisonment ... to the custody of the Attorney General of the United States .... The Attorney General may designate any available, suitable, and appropriate institutions, whether maintained by the District of Columbia government, the federal government, or otherwise, or whether within or without the District of Columbia. The Attorney General is also authorized to order the transfer of any such person from one institution to another if,

in his judgment, it shall be for the well-being of the prisoner or relieve overcrowding or unhealthful conditions in the institution where such prisoner is confined, or for other reasons.

Courts have consistently held that under this statute, as well as under 18 U.S.C. § 4082 committing Federal offenders to the custody of the Attorney General, the Attorney General has the authority to transfer inmates in his discretion (absent constitutionally impermissible reasons) between and within the District of Columbia and Federal correctional systems. *Smith v. Saxbe*, 562 F.2d 729, 735 (D.C.Cir.1977); *Beck v. Wilkes*, 589 F.2d 901, 903–904 (5th Cir.1979) *cert. denied*, 444 U.S. 845, 100 S.Ct. 90, 62 L.Ed.2d 58 (1979); *Curry-Bey v. Jackson*, 422 F.Supp. 926 (D.D.C.1976). That discretion is not restricted by delegation of authority over District of Columbia offenders to the District, 28 C.F.R. Subpart Q Appendix § 0.99 (1980), nor by the District's ability to promulgate rules such as DO 4810–1A pursuant to D.C.Code 24–442. *Cf., McDonnell*, 420 F.Supp. at 220 (delegation of authority to Bureau of Prisons did not restrict Attorney General's discretion); *Milhouse v. Levi*, 548 F.2d 357, 363 (D.C.Cir.1976) (Attorney General retained authority to alter furlough program at D.C. institution in spite of his delegation of authority to the Council of the District of Columbia). Accordingly, DO 4810.1A cannot be held to create a liberty interest in favor of D.C. offenders requiring pre-transfer due process protections.

Moreover, even if DO 4810.1A referred to the Attorney General him or herself, rather than to prison administrators, the result would be the same, as the Court doubts the rule establishes sufficiently particularized standards or criteria to guide decisionmakers as would create a liberty interest. *See Connecticut Board of Pardons v. Dumschat*, 452 U.S. 458, 467, 101 S.Ct. 2460, 2465, 69 L.Ed.2d 158 (1980) (Brennan, J., concurring).

In *Gorham v. Hutto*, 667 F.2d 1146 (4th Cir.1981), the panel found administrative regulations to be policy guidelines, rather than mandatory restrictions on discretionary transfers, and therefore held the regu-

lations insufficient to create a liberty interest. The regulations required a finding that an inmate have "serious personal security needs" before he can be transferred. *Id.* at 1150. Similarly, in *Cofone v. Manson,* 594 F.2d 934 (2d Cir.1979), the Second Circuit found a statutory requirement that the Commissioner of Corrections find an inmate, "needs particular treatment or special facilities ... or [that the transfer] is in the best interest of the state," before transferring him from the state to Federal correctional system was too broad a restriction on official discretion to create a liberty interest. *Id.* at 938. The Court stated that the language of the statute, "simply makes express a standard that would probably govern the Commissioner's exercise of any of his discretionary powers," and was therefore not a substantive limitation on officials' authority to order a transfer. *Id.*

Classification of an inmate in one of the seven categories of DO 4810.1A in contemplation of transferring him is hardly analogous to the "proof of specific acts of misconduct" referred to in *Meachum,* 427 U.S. at 216, 96 S.Ct. at 2534. The classification decision is almost purely subjective due to the nature of the categories and is not qualitatively different from the findings required in *Gorham* or *Cofone.* For example, inmates who present severe management problems, whose lives are in jeopardy, who are known escape risks, who are a threat to their own or others' lives, or who have special placement needs are all part of the larger class of inmates who could be said to have "serious personal security needs" within the *Gorham* regulation, or the class whose transfer would be "in the best interests of the state" within the *Cofone* statute. Inmates in the remaining two categories of DO 4810.1A, those in protective custody and those who were initially designated for placement in the Federal system by the sentencing judge, can apparently be recommended for transfer by the prison administrator without any finding for no reason or for any reason whatsoever.

The abbreviated nature of the hearing mandated by DO 4810.1A also undercuts the position that the rule creates a liberty interest. *See generally, Shango v. Jurich,* 681 F.2d 1091, 1101 (7th Cir.1982) (citations omitted) (degree of procedural protections provided is one consideration in determining whether statute or rule intended to create substantive right). Although an inmate does have the right under the rule to state his objections to his proposed transfer for the record, he could not realistically rebut a conclusory, subjective finding that he presents a severe management problem or that he is a known escape risk. In any case, regardless of the compelling logic of an inmate's objections to transfer, the rule merely requires that those objections be noted in the institutional file that will accompany him upon his transfer to the Federal system; from the language of the rule, an inmate's objections will not forestall the transfer itself.

The Court believes that DO 4810.1A simply makes it more likely that discretion, rather than arbitrary and capricious power, will be exercised in transfer decisions. The rule codifies the common sense notion that, "[I]nterprison transfers are not mindless events, rather, '[t]ransfers between institutions ... are made for a variety of reasons and often involve no more than informed predictions as to what would best serve institutional security or the safety and welfare of the inmate.'" *Shango v. Jurich,* 681 F.2d 1091, 1102 (7th Cir.1982) *quoting Meachum,* 427 U.S. at 226, 228, 96 S.Ct. at 2539, 2540. Unlike the statutes involved in *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) or *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979), the D.C. Department of Corrections rule does not create for an inmate a legitimate expectation that, absent a specific factual finding, he will not be transferred. Rather, it creates the expectation that he will not be transferred without a reason or for a constitutionally impermissible reason, and that he will be informed of the reason for his transfer. That expectation is merely an expectation, not a liberty interest protectible by this Court.

Regarding *Robertson v. Holland,* *Robertson* was a class action for enforce-

ment of DO 4810.1A, and a resulting consent decree required that D.C. offenders transferred to the Federal system without a pre-transfer hearing receive such a hearing. As recognized by the superior court judge who approved the decree and as analyzed above, *Olim* undercut the argument that the rule created a liberty interest. When the legal position upon which a consent decree is based no longer has merit, a later court need not enforce the decree. *Gomes v. Moran*, 605 F.2d 27 (1st Cir. 1979). Furthermore, petitioner Trice has alleged insufficient facts regarding the date of his transfer to the Federal system for the Court to conclude that he is in the class entitled to the benefits of the decree.

Accordingly,

### ORDER

IT IS ORDERED that petitioner's motion to reconsider is GRANTED.

IT IS FURTHER ORDERED that petitioner's petition for writ of habeas corpus is DISMISSED with prejudice.